Good morning, everyone. Our first case today for argument is Sanchez v. El Milagro, No. 24-3250, Ms. Barr. Good morning, Your Honors, and may it please the Court. Whitney Barr on behalf of appellant, Oma Sanchez. This case is about textbook sexual harassment. Ms. Sanchez works the night shift at El Milagro, a tortilla factory. In the summer of 2020, her coworker, Francisco Gutierrez, roped her buttocks on three separate occasions. First, Gutierrez came up behind her, pressed his penis into her buttocks, and rubbed his genitals against her. Ms. Barr, can you tell me which case is most factually analogous to this, in which a court has held that the harassment, similar to what occurred in this case, was severe and pervasive enough to constitute sexual harassment? There are a few cases that I believe are applicable and most analogous here. First would be Patton, and the other case would be Wirth, and in those cases, there was a single touch of an intimate body part. What was the intimate body part in those cases? In Wirth, it was the plaintiff's breast. In Patton? Was it underclothing or overclothing? It was underclothing. That's a big difference, but what was the other one? The other one was Patton, and the harasser had reached up underneath the individual's shorts and touched her upper thigh, but whether or not there's clothing does not mean... What was the frequency in Patton? In Patton, it just happened once. There was one single touch of an intimate body part, and same with Wirth, whereas here, there's multiple instances of physical contact with an intimate body part. Starting with the first time she was groped, Gutierrez pressed his penis into her buttocks and rubbed his genitals against her. Ms. Barr, are there any cases that address a factual situation like that, where it's not only the intimate body part of the person receiving the harassment, but it's also involved intimate body part of the person that's allegedly harassing? No. What happened in this case far surpasses any conduct that this court's ever qualified as non-severe. This was an intimate body part making contact with another intimate body part. This court's repeatedly recognized that direct contact with an intimate body part is among the most severe forms of sexual harassment. This court's deemed the outer boundary of non-severe to be a single poke to the buttocks. That's the principle that I believe decides this case. If a one-time poke is at that outer edge, then genital rubbing against an intimate body part cannot possibly be anything other than severe. But if that one grope that Ms. Sanchez endured isn't enough, then the three times it happened in this hostile work environment. This wasn't just a pat on the arm or a squeeze of the shoulder. This court's never found... Are you going to address employer liability here? Yeah. Because I just have some questions about that as well. It sounds like the first time it happened, she told her supervisor. Second time it happened, she told her supervisor. Third time it happened, she told the supervisor and HR. HR conducted an investigation. HR interviewed her and him. He said, she said situation. HR said, we don't believe her, basically. We believe him. And nonetheless, they sent him a letter reprimanding, it never happened again. What's the basis for holding the employer liable under those facts? Standard for liability for sexual harassment is either failure to discover or remedy the  And El Milagro was on notice of the harassment after the very first time Ms. Sanchez complained I agree with that. But you have to agree that the very first time one incident where he says it never happened and she said it did, that could not constitute severe and pervasive. Somebody walking by somebody else and their genitals touching their buttocks and say that I don't think that would qualify on its own as severe and pervasive harassment under our case law. Would it? Maybe not alone, but certainly when construing the record in her favor, it would. When you look at what actually happened, he didn't just brush his genitals up against Ms. Sanchez. He came up behind her and intentionally rubbed his genitals against her. But the point is, the employer was on notice of this genital rubbing because her supervisor was this designated channel to put the company on notice and he did not follow the sexual harassment policy. So that's where the liability starts is that El Milagro failed to discover it because their own supervisor who they purportedly trained to escalate these complaints to human resources did not follow that policy. And then it shows how egregious the failure was because then he did it again. He came up and touched her buttocks again and then again. What was the employer supposed to do here? It sounds like your client is complaining that she was not promoted. That's what it sounds like to me from your brief, that she was not moved to a more favorable shift or a more favorable department. In other words, she complained of harassment and the employer conducts an investigation, finds that she's not telling the truth, essentially. But the brief, it seems like to me, and what you're suggesting is that the remedy that the employer should have engaged in was to move her to a more favorable shift or a more favorable department. But how can we write an opinion that says when someone complains of sexual harassment, the remedy is for the employer to separate the individuals, which necessarily may mean moving one to a more favorable shift, a more favorable department, or promoting one of them. What is the employer to do here? I think separating the two is the minimum that the employer should be. And how would this employer do that? Well, there were two other shifts at El Miragro, and I don't think either of those are more  In fact, Ms. Sanchez prefers a night shift so she can take care of her children during the day. And there were also three other production facilities. And if she preferred the night shift and she would have been moved off the night shift, then she would have sued for retaliation. So what is El Miragro supposed to do here? What would they do? Well, I think that's a question of reasonableness, which is a question for the jury. And at this stage, the threshold question is whether it was even severe pervasive harassment to begin with. But I believe a reasonable jury could find that they issued this token letter of discipline and just assumed that it didn't happen. Why is it a token letter of discipline? Once the letter was issued, harassment, she never complained of harassment ever again. Why is that a token letter? The law asks whether at the time, given the circumstances, the employer's response was reasonable. But the employer didn't believe her. So again, what were they supposed to do? They conducted an investigation. They concluded that she was not telling the truth. They didn't believe her. Were they supposed to fire Gutierrez nonetheless? Well, in Bakersville, this court held that when the harassment amounts to a physical assault, then a reasonable response would be immediate termination. But they said it didn't. The whole point is they have to conduct... We're not the employer, okay? We're not a super personnel department. They conducted the investigation. They found it was not credible. But nonetheless, they reprimanded Gutierrez, and it never happened again. They basically told him, stay away from her, which apparently he did. A reasonable jury could find that the actual investigation was inadequate, though. As you mentioned, Your Honor, they interviewed her and him, and that's it, putting her word against his. And HR concluded... Did she suggest that there were any witnesses to what happened? Not that she was aware of, but that's the whole point. HR concluded that the harassment just didn't happen because there would have been witnesses, and they would have seen what would have happened. But HR didn't even go to interview any witnesses, didn't even attempt to seek out. A reasonable jury could find that that was negligent on Elma LaGros' behalf. Again, what is the standard we're supposed to write in the opinion, that when an employee complains of harassment and doesn't identify witnesses, the employer is required to post a bulletin in the break room that says, did anybody see this alleged harassment, and if so, let us know so we can interview you? What are they supposed to do? I think they do. I think they go down to the production floor and ask if anyone else saw it. What case law supports that? I think this is an issue for the jury, Your Honor. What law says that that is an issue for the jury? Reasonableness is a question for the jury. So that means that every single one of these cases goes to the jury under your test? Well, only if it passes the initial threshold of being severe or pervasive. In this case— Well, wait a minute. It's got to pass also—it's got to be severe and persuasive, and there has to be a basis for holding the employer liable, right? Certainly. But here we just have the first question. The court will— Oh, no, no. We can affirm summary judgment on any ground. The district judge, Judge Hunt, didn't address the second ground because she found that it was not severe or pervasive. But we could skip right over that and affirm based on—there's no basis for employer liability. I think the first basis for employer liability is the fact that their own supervisor who's purportedly trained to escalate these complaints did not do that, and that is a failure on the company's behalf. Ms. Barr, I think that the—you know, kind of unpacking this a little bit, you know, let's assume that for the purposes of argument today that we disagree with you with regard to whether or not the employer's investigation and response was reasonable, okay? So it's undisputed even by the defendant that at least by the third incident, right, the employer was notified, they conducted their investigation, and they did what they did. So let's assume for purposes of argument that we think that that's reasonable, okay, what they did. There seems to be a dispute of fact as to whether or not she provided notice of the first two incidents, right? And so let's say, again, for the sake of argument, that we send that to the jury, right? What sort of damages, then, would your client be able to claim under that scenario? Your Honor, I think there would need to be the negligence on behalf of the company in order for her to claim damages, and I think there is very clear negligence. Well, the—well, so the—let's break it down by incident, okay? So after the third incident, under my hypothetical, the employer takes reasonable steps. I know you disagree with that, but let's just, you know, humor me here. The—your client says she notified the employer of the first incident. The employer says no. Your client says she notified the employer of the second incident, and the employer says no, so that presumably would go to the jury, right, as to whether or not the employer was provided notice. And the—and if the employer was provided notice and did nothing, and there's no dispute that the employer didn't do anything before the third time, then presumably there might be some, you know, basis for employer liability. But assuming that's the case, what sort of damages would she be able to recover during that interim time, if any? What would your theory of damages be? I think it would largely be emotional distress damages because she was subjected to having to endure further sexual harassment even though she put the company on notice after the very first time that he rubbed his genitals against her. So under that scenario, what you're saying is that you would seek damages for emotional injury and pain and suffering from the time she gave notice of the first incident to the company, assuming that the jury finds that, up until the company takes remediation efforts with regard to the third? Certainly. There's still negligence with regard to the first two in failing to discover their harassment. Your Honor, I see I've cut into my rebuttal time. I reserve the remainder of my time for rebuttal. Thank you, Ms. Barr. Okay, Mr. Tisonis? Yes, sir. Good morning. May it please the Court, my name is Gregory Tisonis and I represent the defendant, Appellee Almilagro, Inc. The District Court conducted a holistic review of the record in this case, considering all the conduct alleged by the plaintiff appellant in its totality. That conduct consists of three incidents of brief physical contact by a coworker, one alleged verbal teasing and vulgarities that plaintiff overheard from four different coworkers in total. Correctly applying the Supreme Court in this Court's precedent and giving plaintiff the benefit of all reasonable inferences, the District Court determined that as a matter of law, the collective acts alleged failed to constitute objectively severe or pervasive. Now, as I understand counsel for the appellant, she in effect challenges you and says there's no case in this Court where the conduct was of this magnitude and we did not find it severe. Can you tell us of a case like this where we did not find it severe? Thank you for the question, Your Honor. I think, in fact, very recently last year in the case of Anderson v. Mott Street, a plaintiff who worked in a restaurant experienced several incidents of physical harassment as well as verbal conduct that she alleged was harassing. In that case, there were three to four instances of physical harassment, which included one grab of her buttocks in addition to other inappropriate contact. Did it include someone rubbing their penis against her buttocks? No, I believe the conduct... Isn't there a difference between someone going up to a person and rubbing their penis against that person's buttocks versus slapping them or pinching them with their hand, like standing next to them, which I think was what happened in Anderson, right? I think there would be a difference in that case, Your Honor, but the record in this case... And you're saying that that difference is not material? I'm saying, Your Honor, that difference is not material in this case because that's not what the record establishes. But doesn't the plaintiff testify that that's what happened? She says that he came up behind her and rubbed his genitalia against her buttocks and she turned around and he kind of smiled and said, oh, sorry. But in her mind, that his reaction, at least as she testifies, indicated to her that it wasn't accidental and it was intentional because there was lots of room around where he could avoid her. At least that's what she testifies to. And don't we have to, at this point at least... I mean, jury might find different facts, but on the record before us at summary judgment, we have to assume those facts to be true. And that's why I was surprised in your brief when you talk about the facts. You say her first occasion describes... She first described an occasion in which the co-worker rubbed against her as he passed behind her. It seems odd to characterize the action of someone rubbing their penis against another person's buttocks as someone casually rubbing against her. And so I wonder whether, as you do in your brief, describing or viewing the facts in that fashion is contrary to the standard that we should apply at summary judgment. Thank you for the question, Your Honor. I think the record evidence here that plaintiffs testified to, specifically at ECF 145-4 at In her report, though, about the incident, she talks about the fact that he rubbed his genitalia against her, right? That's correct. She uses the word rubbed and qualifies it as an accident or what she believed at the time to be an accident. But through the second and third incidents occurring... I mean, in her testimony on page 77, she's asked, do you think that Francisco intentionally rubbed his genitalia against you? And she says yes. That is correct, Your Honor. So... But you just told me that her deposition, she doesn't say that. But here, I mean, I have it in bold on page 77. She specifically says that he came up against me and rubbed his genitalia. In other words, he rubbed his penis against me. Why don't we have to take her at her word, at least at this stage? Why should we construe it the way you do, as just kind of an accidental rubbing? Thank you, Your Honor. I think viewing plaintiff's testimony as a whole is part of drawing the reasonable inferences, both in her favor and what it qualifies as an accident. Well, but if you think she overstated her testimony at that point, your remedy is to cross-examine her at trial before a jury, right? So the jury can make its own determination as to whether or not, you know, that statement can be believed. It's not up to us to draw those credibility determinations and weigh her testimony based upon the record before us, at least at this stage. Isn't that correct? That is correct. And the district court also gave plaintiff the inference that the conduct was intentional, but recognized that... I mean, I don't know if the district court did quite that. In my mind, the district court also characterized the actions much like you did in your brief. You know, I could find it here, but it seems to me that the district court also kind of characterized it as kind of a brief rubbing as Mr. Gutierrez walked by. That doesn't seem to me as like a faithful compliance with the Rule 56 standards either. Certainly, I think the court gave her an expressly, I believe in the opinion, stated that granting the plaintiff the inference that it was intentional, but noting that her basis and her sole basis on the same page of testimony that you quoted for alleging that it was intentional was only because he had an alternative way of passing her without making physical contact. But her testimony or subsequent testimony was that she believed the conduct at the time, in her contemporaneous written statement, to be accidental, and that in terms of duration, that when she had turned, he had already passed. So I think that informs the level of severity of the incident when we are looking at the objective criteria of severe and pervasive conduct sufficient to substantiate a hostile work environment claim. And this court... Does the record have any... Does it tell us what the configuration of that production floor looked like? Did he really have... Could he really do his job? Could she do her job and not have that kind of contact? At the time of the incidents here, this was during the time of COVID, and there were... My understanding is that there were alterations made. There's no photographic evidence in the record that would allow that sort of assessment. The plaintiff has testified there was ample room. I believe Mr. Gutierrez's testimony was just that it was always cramped and crowded given the constant packing of the product at the facility. So the jury would have to evaluate that, I suppose, in determining his credibility. If it were sufficient to constitute objectively severe and pervasive conduct, that may be a jury issue. But if the conduct, either individually or collectively, the three physical incidents that she alleges are not sufficiently severe and pervasive under this court's precedent and under what has been assessed in terms of conduct by other cases, which I think this case falls far below what some of the conduct was in some of those other cases. What would be the basis for employer liability? Let's say the facts are exactly as the plaintiff alleged with respect to the first incident. I'm not aware of any cases that hold, in our court or maybe any others, that hold that a single incident like the one described would be severe and pervasive to affect the workplace environment, to constitute a hostile work environment. I think we'd have to change the law to make that finding. But if we did that, what's the basis for employer liability when the employer subsequently conducts an investigation and finds that she's not credible? Is there any basis for employer liability? What are they supposed to do, fire Gutierrez nonetheless? Thank you, Your Honor. I agree with you there's no basis for employer liability. Are there any cases that suggest that, that there's no basis for employer liability? We have cases that say that if an employer takes an action just because further acts of harassment no longer occur does not necessarily immunize the employer, right? You agree with that? That is correct. But here they send the letter of reprimand to Gutierrez and there's no further complaints of any harassment by the plaintiff. Is that right? That is correct. There's no conduct that she alleges Gutierrez engaged in since the day she made her complaint. Did the company identify any witnesses that were interviewed during discovery? You're more familiar with the record than I am. Did the company fail to interview any witnesses that allegedly had seen this particular conduct? No. During the interview, so part of the company's standard process is to get written statements from the individuals, conduct verbal interviews with each of the individuals which they then sign off on with a member of human resources. During that interview and in her written statement, plaintiff did not identify any witnesses to the alleged conduct. Was the argument made below that the company's investigation was somehow inappropriate or not thorough? Did the plaintiff press that argument below in the district court? I believe at the district court level, the plaintiff alleged, as they allege here on appeal, that the investigation was inadequate. The discipline issued to Gutierrez was just appropriate. Why specifically was the investigation inadequate? As Your Honor noted earlier in questioning plaintiff's counsel, plaintiffs contend that there's an obligation, there's a duty to seek out witnesses, to try to get more information that the plaintiff herself has not offered in her complaint to the company. We don't think that that is the law and we similarly have not identified any such precedent. We do have precedent, however, that in terms of employer liability to the question you asked, there is precedent that establishes that mere conduct that does not satisfy the severe and objective conduct for actionable sexual harassment, notice of conduct that falls below that threshold does not constitute notice of the employer of the subsequent harassment. And that's the Bombacci decision. This is on page 50 in our brief that indicates, you know, knowledge of sexual jokes or inappropriate comments doesn't establish sexual harassment, notice of sexual harassment because the incidents complained of don't establish an actionable hostile work environment. Mott was the restaurant case, wasn't it? That's correct. Where it was the hostess that was continually being grabbed in the butt and comments being made directly to her by coworkers, which she included in her EEO complaint. So those were before us at the time. Is that right? It's fuzzy. I think I remember that case, but I don't remember the details. That is correct. As I mentioned, there was three or four incidents of physical contact, including grabbing the buttocks, a coworker who I believe was the bar manager calling her a bitch, and a manager telling her she should wear tight form-fitting clothing.  So with respect to employer harassment and employer liability as to harassment, you know, the conduct, the first or second incident, prior to plaintiff actually reporting the conduct to human resources, wouldn't have put the employer on notice for a number of reasons. One is, as I mentioned, the conduct that doesn't satisfy the severe and objective conduct standard for actionable hospital work environments don't establish an employer's knowledge of that. Similarly, though, granting plaintiff the inference that she made verbal complaints to Brito, her supervisor, the way that she described those complaints in terms of an accident has happened. She subsequently gave some information, and certainly, as your honor noted, she did state that she believed the conduct to be intentional, but the way that she qualified, it's undisputed at ECF 145-4 at 86 that she understood that her supervisor took it as an accident, that he understood the first incident to be an accident, and that when she reported the second incident, she testified that she told Brito that a new accident had occurred and described the incident as Gutierrez lowered his hand, touching my buttocks on the left. That conduct is insufficient to put the employer on notice and cannot establish, even assuming those reports occur, a basis for employer liability. What about her, just again reading from her deposition, what about her testimony on page 84 and 85 where she says she told Brito after the first incident that specifically told him that Mr. Gutierrez rubbed his genitals on my buttocks, and she told him that she felt very bad and felt very uncomfortable as to what happened and told him that she thought Mr. Gutierrez intentionally did so? What about that testimony? But certainly, I think, again, she has established in her testimony and granting her the reasonable inference at this stage that that occurred, that she reported it as intentional conduct. I think it is also undisputed, though, that she qualified and she understood after that report that her supervisor believed it to be an accident. And I think that is relevant for purposes of the employer liability, that even granting plaintiffs the reasonable inference, she reported it in that manner, she described it as intentional, and she described the conduct, as we've discussed here today, that her plaintiff believed it to be an accident. So if Brito thought that it was an accident, you're saying he had no obligation to alert HR of this complaint, even though the complainant thought it was intentional? Does he have that authority? Under the company's reporting policy, a supervisor such as Brito, yes, is required to report that to Human Resources. However, for Title VII purposes, when we are considering, I guess, supervisor liability or the threshold for which a supervisor is... his acts are imputed to the company, he was not... It's undisputed that he doesn't have the authority to hire, fire, demote, or otherwise transfer. Right, but the company's policies instruct her to tell Brito, right? It says, you know, anyone that experiences harassment should tell their direct supervisor or immediate supervisor. I forget what exactly the language is. And that's what she did. I mean, I don't... Don't we have case law saying that if that's the procedure the company lays out, then the company's obliged to abide by its own procedures? Because after all, the employees are relying upon those procedures to notify the company of any perceived wrongdoing. I see I'm out of time. I'll answer your question briefly, Your Honor. The company's reporting policy does say that you may report any acts you consider harassment to a supervisor, Human Resources, or a member of management with whom you feel comfortable. There is precedent, as you note, Your Honor, that states reporting to a supervisor is obviously reporting within the reporting policy. It qualifies as a report of alleged harassment. We have identified a couple of cases in our briefing. I believe it's the Yankins case and the Parkins case that demonstrate that certain supervisors that lack the authority to actually alter the terms and conditions of employment... But you agree that... I'm sorry, Judge, do you mind if I...? No, go ahead. You agree that Mr. Brito was Ms. Sanchez's immediate supervisor, right? That is correct. And your manual says, must report it to their immediate supervisor, and that's what she did. And so she followed your manual, and are you saying that she should have this knowledge of what different circuits have said about whether or not which supervisors are real supervisors versus fake supervisors for this purpose of notice? No, Your Honor, that's not what I'm contending. I think, as we noted in our briefing, she could have, and there's evidence in the record establishing she's aware she could have reported it to Human Resources. I understand she contended in her deposition otherwise that she didn't, but the documentary evidence establishes that she knew she could, and she never reported that conduct to Human Resources as an alternative, that when faced with an action, some of the precedent that we've cited obligates the plaintiff to pursue alternative reporting mechanisms. Even though your manual tells her she can report it to Brideau? The manual, yes, does say she may report it to her supervisor, but the method by which she described it, even as she believed it to be intentional, again, Brideau understood it to be accidental, I think is clear from the record in plaintiff's own admission. Thank you. Thank you, Your Honors. Thank you, Mr. Tessonis. Ms. Bauer. Thank you. Your Honors, Mr. Tessonis just recited an entirely different version of the facts from Ms. Sanchez's account, and that's exactly why this case should go before a jury. Pelley presents a watered-down and sanitized version of the record, but Gutierrez did not just brush up against Ms. Sanchez. He intentionally pressed his groin into her buttocks and rubbed his genitals against her and then groped her buttocks twice after that. Okay, assume the facts are exactly as you say they are. He rubbed up against her, pressed his genitals against her buttocks. What case supports the position? I'm going to read to you from Patton that the workplace was so permeated with harassment on the basis of sex that the conditions of employment are altered and a hostile or abusive work environment is created based on that one incident. What case supports it? There's no case that's been heard that's that severe. Somebody rubbing their genitals. Well, wait a minute. I mean, sticking your hand under somebody's shirt and grabbing their breast is less severe than walking past someone and rubbing their genitals against their buttocks when she turns and she turns and he's gone? Come on, you can't be serious about that. But that's not constraining the record in her favor. He intentionally rubbed his genitals against her. He's wearing clothes, and so is she. And you're suggesting that sticking your hand under somebody's clothes and grabbing one of their private parts is less severe than what happened in that one incident? It wasn't just the one time. I know, but I'm asking you. But the third time they conduct an investigation, which is a major problem for you because they respond. You agree with that, right? Yes, but the employer doesn't get to serve as their own jury and just decide that the plaintiff is not credible. If that were the case, then the employer would be able to insulate themselves. Who gets to decide that? The jury does when the case goes to a jury. Always. As long as the employee complains, it makes no difference. Why would an employee ever conduct an investigation under your theory? Because all the employee has to do is complain, under which you're arguing the employee complains they get a jury. It's that simple. That is not the law. There is a threshold of the severe and pervasive standard first. But all that's needed for negligence is clear notice, and we have that here not once but on two occasions. So what you're saying is we should write an opinion that says it makes no difference what the employer does. Nothing. The employer should, in that case, do absolutely nothing because it will be up to a jury to decide. That's your argument. No, but here a reasonable jury could find that the employer was negligent because they didn't interview witnesses, despite their conclusion that if it happened, there would have been witnesses. What witness did she identify that was not interviewed? The record doesn't inflect that she was asked to give a witness, but the onus is on the employer. Ms. Sanchez is not in charge of going and interviewing all her other co-workers. That's not a position. I guess they could have employed everybody in the plant, but most employers don't do that. I mean, they're in the business of business, right? All right. Thank you, Ms. Bauer. We'll take the case under advisement.